**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JULIE A. SU, Acting Secretary of Labor,**
**United States Department of Labor,**

**Plaintiff,**

**vs.** **1:22-cv-00886 (MAD/TWD)**

**DAVID IP,**

**Defendant.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |
| **U.S. DEPARTMENT OF LABOR**<br>**OFFICE OF THE SOLICITOR**<br>201 Varick Street<br>Room 983<br>New York, New York 10014<br>Attorneys for Plaintiff | **AMY TAI, ESQ.**<br>**HOLLIS VIRGINIA PFITSCH, ESQ.** |
| **MANN LAW FIRM, PC**<br>426 Troy-Schenectady<br>Latham, NY 12110<br>Attorneys for Defendant | **MATTHEW J. MANN, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On August 25, 2022, Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor ("Plaintiff"), commenced this action against Defendant David Ip ("Defendant") pursuant to 29 U.S.C. § 215(a)(3), seeking to redress alleged violations of the Federal Labor Standards Act ("FLSA"). *See* Dkt. No. 1. Plaintiff's amended complaint alleges one cause of action against Defendant under the FLSA's anti-retaliation provisions, which bar "retaliation against employees and former employees because they assert their rights under the FLSA." Dkt. No. 37 at ¶ 32 (citation omitted).

On November 15, 2022, Defendant filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure. *See* Dkt. No. 11. Plaintiff opposed the motion and cross-moved to amend the complaint. *See* Dkt. No. 19. On May 11, 2023, the Court issued a Memorandum-Decision and Order denying Defendant's motions to dismiss and denying Plaintiff's cross-motion to amend as moot. *See* Dkt. No. 24.

Currently pending before the Court is Defendant's motion for summary judgment, which Plaintiff has opposed. *See* Dkt. Nos. 72, 80. For the reasons that follow, Defendant's motion for summary judgment is denied.

## II. BACKGROUND[1]

Defendant "was an owner/manager of Ichiban Food Services, Inc. . . . [which] operated a restaurant commonly known as Ichiban Restaurant," (hereinafter referred to as "the restaurant"). Dkt. No. 72-12 at 51:6-19.[2] Xue Hui Zhang and Yue Hua Chen were employees of Ichiban until December 2015. *See* Dkt. No. 72-4 at ¶ 1. On February 9, 2017, Xue Hui Zhang commenced an action against Defendant in the Northern District of New York alleging, among other things, "that he was not compensated in accordance with the [FLSA]" (hereinafter referred to as "the Zhang Action"). *Id.* at ¶ 4; *see Zhang, et al., v. Ichiban Group, LLC, et al.*, No. 1:17-CV-00148 (N.D.N.Y.). The Zhang Action was later joined by Yue Hua Chen. *See* Dkt. No. 72-4 at ¶ 5.

---

[1] The facts set forth herein are derived from the pleadings, properly supported statements of material fact, affidavits, depositions, and other admissible evidence in the record. To that end, Defendant's narrative denials of Plaintiff's statement of additional material facts fails to, with few exceptions, cite to admissible record evidence. *See* Dkt. No. 81; N.D.N.Y. L.R. 56.1. For the reasons explained below, such narrative denials, with no support in admissible record evidence, fail to meet Defendant's burden of demonstrating the absence of triable issues of material fact, *see* Fed. R. Civ. P. 56, and, instead, highlight the existence of a plethora of disputes of fact.

[2] Citations refer to the pagination generated by CM/ECF, the Court's electronic filing system.

The restaurant ceased operation in 2016 and, thereafter, Defendant "operated a private security business which hired off[-]duty and former law enforcement officers." *Id.* at ¶ 2. Adrian Morin, Sr. was an employee of Defendant's private security business. *See id.* at ¶ 3. Morin also serves as a Rensselaer County deputy sheriff. *See id.*

The deposition of Xue Hui Zhang, in the Zhang Action, was scheduled for August 12, 2019.[3] *Id.* at ¶ 7. On or about August 8, 2019, Morin contacted Immigration and Customs Enforcement ("ICE"). *Id.* at ¶ 9. On August 12, 2019, ICE agents arrived in the vicinity of Zhang's deposition and, during the lunch break, arrested and detained Zhang. *Id.* at ¶ 10. Chen, who was also present, was, for reasons unexplained, not detained by ICE. *Id.* at ¶ 11.

The parties agree that Morin called ICE and provided information about Zhang and Chen, for the purpose of having Zhang and Chen detained. *Id.* at ¶¶ 21-27. However, the parties dispute the extent of Defendant's involvement, and whether Defendant provided Morin with the information regarding Zhang's and Chen's immigration status, dates of birth, social security numbers, nation of origin, approximate ages, and the date, time, and location of the deposition.

Defendant asserts that he "never asked Morin to call ICE," was "unaware that Morin contacted ICE," and did not share any personally identifying information with Morin for the purpose of having ICE detain Zhang and Chen. *Id.* at ¶¶ 14, 17, 21-27. Defendant claims that he made "off handed commentary" to Morin and, was, "at best, [an] unwitting participant" in Morin's scheme to have Zhang and Chen detained by ICE. *Id.* at ¶¶ 31, 33-34. Plaintiff disputes these alleged facts and contends that Defendant intentionally shared personally identifying information

---

[3] Paragraph seven of Defendant's statement of material facts indicates that Zhang's deposition occurred on April 12, 2019, however, from the context of Defendant's other statements, it is clear that this is merely a typographical error and the deposition took place on August 12. *See* Dkt. No. 72-4 at ¶¶ 8-10.

about Zhang and Chen with Morin, over the course of the year in 2019, including the week before the deposition took place, and encouraged Morin to relay the information to ICE as retaliation against his former employees for bringing for the Zhang Action. *See* Dkt. No. 80-1, Plaintiff's Response to Defendant's Statement of Material Facts at ¶¶ 19-43; Dkt. No. 80-1, Plaintiff's Statement of Additional Material Facts at ¶¶ 1-19.

## III. DISCUSSION

### A. Motion to Strike

Plaintiff has moved to strike certain aspects of Defendant's motion for summary judgment. *See* Dkt. No. 80 at 25-27. Specifically, Defendant requests that the Court disregard Morin's affidavit submitted in support of Plaintiff's motion for summary judgment (hereinafter "the Morin Affidavit"), Dkt. No. 72-3, insofar as it violates Rule 56(c)(4) of the Federal Rules of Civil Procedure, because statements therein are not based on Morin's personal knowledge and because statements therein contradict Morin's prior deposition testimony or assert improper legal conclusions, *see* Dkt. No.80 at 25-27.[4]

Under Rule 56, a declaration used to support or oppose a motion for summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment, and a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Payne v. Cornell Univ.*, No. 21-109-CV, 2022 WL 453441, *2 (2d Cir. Feb. 15, 2022) (quotation and internal quotation marks omitted). "Thus,

[4] Although Plaintiff does not formally label the request that the Court disregard the Morin Affidavit a "motion to strike," Plaintiff is, practically speaking, moving to strike portions of the Morin Affidavit.

a court may strike those portions of a declaration that are not made upon the declarant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Federal Trade Commission v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017) (citing *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995)). "Because 'a decision on the motion to strike may affect [the movant's] ability to prevail on summary judgment,' it is appropriate to consider a motion to strike prior to a motion for summary judgment." *Pugliese v. Verizon N.Y., Inc.*, No. 05-CV-4005, 2008 WL 2882092, *5 (S.D.N.Y. July 9, 2008) (quoting *Gucci Am., Inc. v. Ashley Reed Trading, Inc.*, No. 00-CV-6041, 2003 WL 22327162, *2 (S.D.N.Y. Oct. 10, 2003)).

In the present matter, the Court finds that some statements, but not all statements, in the Morin Affidavit improperly assert facts that are not based on Morin's personal knowledge, contradict Morin's deposition testimony, or are improper legal conclusions. Using its discretion, the Court will not strike the Morin Affidavit from the record and the motion to strike is therefore denied. However, only those assertions in the Morin Affidavit that are based upon Morin's personal knowledge and do not contradict his prior deposition testimony or assert improper legal conclusions will be considered. *See Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 95-96 (S.D.N.Y. 2020) (declining to entirely disregard five declarations that contained inadmissible evidence, and, instead, considering only the admissible portions thereof).

**B. Summary Judgment Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the

court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted). "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir. 1997) (citation omitted). Moreover, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is

some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Jeffreys*, 426 F.3d at 554 (quotations omitted).

**C. FLSA Retaliation**

Plaintiff argues that Defendant cannot meet the burden of showing a *prima facie* retaliation claim under the FLSA. *See* Dkt. No. 72-6 at 4-7. Defendant responds that she has established a *prima facie* retaliation claim under the FLSA and that summary judgment is precluded because the record contains "significant evidence for a jury to find that" Plaintiff's purported non-retaliatory reasons are merely pretextual. Dkt. No. 80 at 12-28.

Pursuant to the FLSA's anti-retaliation provision, it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). To establish a *prima facie* case of retaliation, a plaintiff must show "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010) (citation omitted). An employment action disadvantages an employee if it dissuades a reasonable worker from making or supporting an FLSA violation charge. *See id.* (citations omitted). "[A] causal connection between an adverse action and a plaintiff's protected activity may be established 'through evidence of retaliatory animus directed against a plaintiff by the defendant[.]'" *Id.* (quoting *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)). Alternatively, a causal connection may be established "by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (citation omitted).

"FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Mullins*, 626 F.3d at 53 (citation omitted). Once the plaintiff presents a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its conduct. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Upon the defendant's articulation of a legitimate, non-retaliatory reason, "'the presumption of retaliation dissipates,' and the burden shifts back to the plaintiff to prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 (S.D.N.Y. 2020) (citing *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)). The "but-for" causation standard "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).[5]

### *1. Plaintiff's Initial Burden*

Defendant concedes that Plaintiff has demonstrated that Zhang and Chen were engaged in protected activity when they were participating in depositions for the Zhang Action, *see* Dkt. No. 72-6 at 5, and therefore, only the second and third elements of a *prima facie* case are presently at issue.

#### *a. Adverse Action*

---

[5] The Second Circuit has not established the causation standard for FLSA retaliation claims. *See Fox v. Starbucks Corp.*, No. 21-2531, 2023 WL 407493, at *1, 1 n.1 (2d Cir. Jan. 26, 2023) (declining to determine whether a but-for causation standard applies to FLSA retaliation claims, but holding that a plaintiff must at least show "that it is more likely than not the employer's decision was motivated, at least in part, by an intent to retaliate"). In the absence of clear direction from the Second Circuit, the Court will continue to apply the but-for causation standard. *See Walsh v. Ip*, No. 1:22-00886, 2023 WL 3377629, *3 (N.D.N.Y. May 11, 2023) (applying the "but-for" causation standard when denying the motion to dismiss previously filed in this matter).

The record raises several material questions of fact as to whether Defendant engaged in any adverse action through conduct that "well might have dissuaded a reasonable worker from making or supporting" the FLSA claims in the Zhang Action. *Mullins*, 626 F.3d at 53 (quotation and internal quotation marks omitted). Plaintiff argues that Defendant engaged in an adverse employment action when he "repeatedly discussed Zhang's immigration status with a law enforcement officer, Deputy Sheriff Morin, leading Morin to believe that 'this guy wasn't supposed to be here,' and intentionally gave Zhang and Chen's names and personally identifying information to [Morin], along with the dates and location of the deposition." Dkt. No. 80 at 13 (quotation omitted). Defendant contends that Morin acted independently, conducting his own investigation into Zhang and Chen, and, entirely of his own volition, contacted ICE. *See* Dkt. No. 72-6 at 5-7. According to Defendant, he never asked, suggested, or implied Morin should investigate Zhang's or Chen's immigration status and did not ask Morin to contact ICE. *See id.*

"[R]eporting [a former or current employee who is] an illegal alien to government authorities," has been found to constitute an adverse action in violation of the anti-retaliation provisions set forth in Section 215(a)(3). *Centeno-Bernuy v. Perry*, No. 03-CV-457, 2009 WL 2424380, *8 (W.D.N.Y. Aug. 5, 2009) (collecting cases). Indeed, "[m]ultiple courts have found FLSA retaliation when a former employer 'threaten[s] immigration related consequences.'" *Vazquez v. 142 Knickerbocker Enterprises, Corp.*, No. 13-CV-6085, 2024 WL 4437164, *14 (E.D.N.Y. Oct. 7, 2024) (quotation omitted) (collecting cases). In cases of retaliation against former employees, "the category of conduct that constitutes actionable retaliation includes more than just adverse employment actions or ultimate employment decisions." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) (quotation and internal quotation marks omitted).

Plaintiff has marshaled evidence that raises triable issues of fact as to whether Defendant acted in a manner that might well have dissuaded Zhang and Chen from pursuing the Zhang Action. Specifically, Plaintiff points to Morin's deposition testimony that Defendant was the source of the information that Morin provided to ICE Officer Richard Nicol, which led to ICE arresting Zhang on the day of Zhang's deposition. *See* Dkt. No. 80 at 14-18. Indeed, Morin testified that Defendant provided him with Zhang's full name, date of birth, approximate age, where the former employees resided, and told Morin that Zhang was "appealing" an immigration proceeding. *See* Dkt. No. 80-8 at 14:13-15:2, 26:1-17, 27:7-8; Dkt. No. 80-1, The Acting Secretary's Statement of Additional Material Facts at ¶¶ 1-6. Morin testified that he shared the information provided by Defendant with ICE and told ICE that he had reason to believe Zhang was wanted by ICE. Dkt. No.80-8 at 26:1-17, 38:13-39:25. Plaintiff has also provided a Declaration from Nicol, wherein Nicol states that he used the information provided by Morin to confirm that Zhang was "subject to an enforcement action." Dkt. No. 80-2 at ¶¶ 2-10. Nicol also states that Morin provided a specific location, date, and time that Zhang would be in the Albany area and that, relying upon the information provided by Morin, Nicol completed a Field Operations Worksheet and referred the matter to the Fugitive Operations team to handle the enforcement action. *Id.* at ¶¶ 10-12.

Construing the facts in the light most favorable to the non-moving party (Plaintiff), the record gives rise to genuine issues of material fact as to whether Defendant engaged in adverse action against former employees. A number of these factual questions turn on assessing whether witnesses for Plaintiff and Defendant are providing credible, truthful testimony. If these and other questions are resolved in Plaintiff's favor, a reasonable fact finder could conclude that Defendant engaged in adverse actions by supplying information about Zhang's and Chen's

immigration status, along with other identifying information and the specific date and location of Zhang's deposition, to Morin, for the purpose of instigating an arrest by ICE in retaliation for the Zhang Action.

***b. Causation***

Defendant argues that there is no evidence of a causal connection between the protected activity and an adverse action because Defendant did not "take any action disadvantaging Zhang and Chen," and because "Morin's actions were his own and cannot be imputed to Defendant in any way." Dkt. No. 72-6 at 5-7. Plaintiff responds that a causal connection can be established between Defendant "providing personal and adverse information about his former employees to law enforcement, and the employees' protected activity of testifying at the deposition," based upon Defendant's retaliatory animus towards Zhang and Chen, as shown by Defendant's statements of retaliatory intent, and based upon the close temporal proximity between Zhang's deposition and when Defendant provided Morin with the information. Dkt. No. 80 at 18-22.

Morin testified regarding statements Defendant made about Zhang and Chen, including: (1) that Zhang and Chen "wanted his money," Dkt. No. 80-8 at 18:21-19-1; (2) referring to Zhang as a "scammer" and "that asshole that is suing me," *id.* at 10:24-11:1; and (3) while discussing Zhang's purported immigration status, stating, "it isn't right that guy can sue me," *id.* at 10:2-6. Moreover, in an affidavit submitted to this Court in support of his motion for summary judgment, Defendant admits to referring to Zhang, Chen, and others involved in the Zhang Action as "low lives or some other similarly accurate term," in conversations with Morin. Dkt. No. 72-1 at ¶ 11-13. If Plaintiff's version of events were credited by a jury, Defendant's derogatory statements about Zhang and Chen, during the time leading up to Zhang's deposition, could show that Defendant shared the identifying information and date and location of the deposition because he

harbored a retaliatory animus and, thus, a causal connection between the protected activity and Defendant's alleged adverse action. *See, e.g. Patane v. Clark*, 508 F.3d 106, 116-17 (2d Cir. 2007) (finding a causal connection was adequately pleaded where the plaintiff alleged that she overheard her employer make statements regarding a conspiracy to "drive her out of her job"); *Wright v. Snyder*, No. 3:21-CV-104, 2023 WL 6379451, *11 (D. Conn. Sept. 30, 2023) (denying summary judgment on a First Amendment retaliation claim because there were genuine disputes of material fact about whether the defendant made statements evincing retaliatory animus and, although the defendant denied making the statements, such factual dispute could not be resolved at summary judgment).

Additionally, Plaintiff has adduced evidence that, if credited by a jury, could demonstrate a close temporal proximity between Defendant's alleged report of Zhang's and Chen's immigration status and whereabouts and the protected activity of participating in the deposition. *See* Dkt. No. 80 at 20- 22. The Second Circuit "has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." *Gorzynski v. JetBlue Airways Corp.*, 596 F. 3d 93, 110 (2d Cir. 2010). "Rather, it is up to [the C]ourt [to] 'exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'" *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 385 (E.D.N.Y. 2011) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). A period of several months between a protected activity and adverse action has, however, been held to be sufficient to infer a causal connection. *See Gozynski*, 596 F.3d at 110 (holding that five months between a protected activity and adverse action sufficient to infer a causal connection). *But see Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503 (S.D.N.Y. 2010) (observing that most decisions by courts in the Second Circuit "have held that

lapses of time shorter than even three months are insufficient to support an inference of causation").

Here, the record contains evidence that Defendant allegedly made the detrimental statements about Zhang and Chen to Morin over the course of several months, beginning in early 2019, and, after Morin relayed such information to ICE, Zhang was arrested during the lunch break of his deposition in August 2019. *See* Dkt. No. 80-8 at 9:16-10:23; 16:3-14. Morin also testified that, in the week preceding Zhang's deposition, Defendant discussed the date and location of the deposition with him. *See id.* at 10:24-11:1; Dkt. No. 80-10 at 22:10-16.

Further, the record contains evidence that, on August 8, 2019, in the hours before Nicol sent an email to another ICE officer (informing the officer that Nicol had received information about Zhang and two others who "are reported to have final order of removal and absconded"), Dkt. No. 80-3 at 2, Morin sent Defendant approximately eleven text messages and called Defendant multiple times. *See* Dkt. No. 80-6 at 16-17, 29. Morin's phone records also show that, on August 9, 2019—the Friday before Zhang's deposition on Monday August 12, 2019— Morin and Defendant exchanged over a dozen text messages and, sandwiched in-between those text messages, are text messages between Morin and Nicol. *See* Dkt. No. 80 at 21 (citing Dkt. No. 80-6 at 31-34). After Morin's last text messages to Nicol, Morin called Defendant twice. *See* Dkt. No. 80-6 at 17.[6]

---

[6] Plaintiff claims that the content of Morin's text messages are "no longer available because [Defendant] and Morin destroyed their phones." Dkt. No. 80 at 21-22. Plaintiff does not, at this time, request a spoliation remedy—such as an adverse inference against Defendant—but the Court notes that, if Plaintiff were to meet the burden of establishing the elements of a spoliation claim, an adverse inference instruction to a finder of fact may be appropriate at a later date. *See Watkins v. N.Y. City Transit Auth.*, No. 16 CIV. 4161, 2018 WL 895624, *10 (S.D.N.Y. Feb. 13, 2018) (describing the standards and procedure for awarding spoliation sanctions under Federal Rule of Civil Procedure 37(e)).

For these reasons, construing the facts in the light most favorable to Plaintiff, a reasonable juror could find that either, or both, Defendant's alleged statements evincing animus and the close temporal proximity between communications between Defendant and Morin regarding the former employees and Morin's report of the information to ICE show an inference of retaliation, establishing a causal connection.[7]

***2. Non-Retaliatory Reason and Pretext***

Defendant argues that, even if Plaintiff could establish a *prima facie* case of retaliation, he has articulated a legitimate, non-retaliatory reason—namely, that he was merely complaining to Morin, unaware that Morin would relay the information about Zhang and Chen to ICE. Dkt. No. 72-6 at 6-7. However, even in the face of Defendant's articulation of a legitimate non-retaliatory reason, the record raises material questions of fact as to whether Defendant's conduct was "more likely than not . . . motivated, at least in part, by an intent to retaliate" against Zhang and Chen. *Fox v. Starbucks Corp.*, No. 21-2531, 2023 WL 407493, *1 (2d Cir. Jan. 26, 2023).

Most notably, there are a number of inconsistencies and discrepancies in Defendant's version of events. For example, Defendant claims he did not know that Morin called ICE until after Zhang's arrest and that Defendant "was incensed by Morin's actions in contacting ICE." Dkt. No. 72-6 at 7. However, Defendant and Morin offer conflicting and inconsistent versions of when they spoke on the day of the arrest and on what day Defendant learned Morin contacted ICE. Defendant testified that he did not speak with Morin on the day of Zhang's arrest and that the first time he heard that Morin had contacted ICE was "[a] few days" after the arrest. *See* Dkt.

[7] Defendant's argument that he cannot be held liable because "the record is clear that the actions which resulted in adverse impact to one of the FLSA protected individuals was done independently by a third-party—Adrian Morin," is unavailing. Indeed, for the reasons articulated above, *see supra* Part III, the record is not "clear" that Morin acted independently. The disputed facts related to the extent of Defendant's actions preclude summary judgment.

No. 80-7 at 9:3-14; 11:19-12:4. On the other hand, Morin testified that he and Defendant spoke on the day of the deposition about Zhang's arrest after it occurred. *See* Dkt. No. 80-10 at 17:15-18:3. And, Morin himself has given inconsistent testimony about when he told Defendant that he called ICE; intially, Morin testified that he did not tell Defendant that he contacted ICE until a day or two later, Dkt. No. 80-8 at 11:11-20, but, after being confronted with his cell phone records, Morin recanted and testified that he called Defendant on the day of the arrest and, at that time, told Defendant that he had reported the employees to ICE, Dkt. No. 80-10 at 17:15-18:5.

"Where, as here, 'the parties have put forward several alleged causes of the [adverse action] . . . ,' the 'determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment.'" *Zaja v. SUNY Upstate Med. Univ./Upstate Healthcare Ctr.*, No. 5:20-CV-337, 2022 WL 4465498, *10 (N.D.N.Y. Sept. 26, 2022) (quoting *Zann Kwan*, 737 F.3d at 846 n.5). The inconsistencies about key events in Defendant and Morin's story could lead a reasonable jury to conclude that Defendant's proffered reason is pretextual. *See Villetti v. Guidepoint Glob. LLC*, No. 21-2059-CV, 2022 WL 2525662, *7 (2d Cir. July 7, 2022) ("Viewing the evidence in the light most favorable to [the non-moving party], as we must, we conclude that '[f]rom such discrepancies[,] a reasonable juror could infer that the explanations given by [the defendant] . . . were pretextual, developed over time to counter the evidence suggesting' retaliation") (quotation omitted). Accordingly, for the reasons set forth herein, summary judgment must be denied.

## IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 72) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 24, 2024
Albany, New York

Mae A. D'Agostino
U.S. District Judge